Gibson, J.
When the agreement which gives rise to this controversy, was entered into, the interests of all parties who had liens, stood thus: Dales had obtained a judgment against Caruthers on the 17th of July, 1817. Bay less, and Thornton had obtained a judgment against Gregg and Caruthers on the 25th of February, 1820. Breading, the present defendant, had obtained a judgment against Caruthers, on the 8th of March, 1820: and E. and C. Hunt, the present plaintiffs, *had obtained two judgments against Gregg and Caruthers; the one on the 11th of Biarch, and the other on the 8th of Becember, 1820. ' These judgments were liens on the land of Caruthers, in the order of priority in which I have mentioned them. Bay less and Thornton had issued a fieri facias on their judgment, and had seized the partnership effects of Gregg and Caruthers in execution, but at the same time permitted those effects to remain in the custody of the latter; as appears by the sheriff’s return. While matters are in this state, an agreement is entered into between the Messrs. Hunts, Bay-less, the partner of Thornton, and Gregg, the partner of Caru-thers, by which it is stipulated, that the levy under the execution of Bayless and Thornton shall be set aside; that their judgment *40 shall be assigned to the Messrs. Hunts, who engage to pay them their debt; and that the goods of Gregg and Caruthers, which were thus to be released from execution, shall be delivered to the Messrs. Hunts, in payment of the demand which they had in their own right. This agreement is afterwards carried into execution; and the land of Caruthers being subsequently sold on the judgment of Dales, it is contended, that the judgment of Bayless and Thornton in the hands of the Messrs. Hunts, ought to be treated as still outstanding, and as a lien entitled to a priority over the judgment of Breading.
It is unnecessary to consider the effect of the rule in equity, which compels a creditor who has a security on two funds, to take his satisfaction out of a particular one of them, in favour of a creditor who has a security exclusively on the other, as I am satisfied, on principles of law, that a judgment creditor who has seized the goods of his debtor in execution, cannot discharge them, and leave his judgment in force as to the land. But there are particular circumstances in the case stated which render it a peculiar one, and which it is worth while to consider. A judgment creditor, who has seized the goods of his debtor, agrees, to set aside his levy and assign his judgment to subsequent judgment creditors, on receiving the amount of his debt from them; while they, on the other hand, receive freta the debtor in payment, as it is said, of the debts originally due them, the very goods which had been levied in satisfaction of the judgment which is assigned to them: and all this circuity of, what is in effect, payment of that judgment, to elude an intermediate judgment which is a lien on the land. To their own rights the plaintiffs unite in their own persons, the rights of Bay less and Thornton; and it is immaterial to the argument, whether all those rights are united to the persons of the plaintiffs, or in the persons of Bay less and Thornton: the clients of ownership, as to this particular judgment, would be exactly the same. If, then, Bayless and Thornton had become assignees of the two judgments of the plaintiffs, could they have released the goods of Gregg and Caruthers, which had been seized in execution on their prior judgment, and at the same instant have received those goods directly in payment of tiieir subsequent judgments, so as to reserve the first as a lien on the land ? No one will pretend it. That would put it in their power to lock up the goods of the debtor, under an execution on their prior judgment, till matters should be in train to seize the same goods in execution for another debt, and thus, by changing the application of their levy, enable them to obtain a preference as regards both the real and the personal estate. But it is said, that consequence could not have been produced in this instance, because the goods were left in possession of the debtor, and there was no obstruction to a levy by subsequent execution creditors. I admit it. But it is impossible not to see, that the whole ai’rangement was intended to produce payment in effect *41 of the judgment of Bayless and Thornton, and at the same time to give the judgments of the Messrs. Hunts a priority over the judgment of Breading, at least to the value of the goods; and that such an arrangement would be fraudulent in the contemplation of law, I am very much inclined to believe. But the cause is clearly with the defendant on another ground. Seizing goods in execution to the value of the debt, is a discharge of all responsibility on the part of the debtor, and consequently, a discharge of the judgment; and this whether the goods be sold or not; all further remedy being against the sheriff, who becomes exclusively liable by the seizure. Clerk v. Withers, 1 Salk. 323. Mountney v. Andrews, Cro. Eliz. 235. She v. Finch, 2 Roll. Rep. 57. Cockrant v. Welhy, 2 Show. 79. pl. 63. Speake v. Richards, Hob. 206. 4 Mod. 404. Where, indeed, the sheriff has seized pn a fi. fa., but returns nulla bona, and there is a recovery against him by the judgment creditor for a false return, the fact of actual seizure will not discharge the judgment, but the property in the goods will remain in the debtor, subject to any other execution. Underwood v. Mordaunt, 2 Vern. 238. But this consequence, I apprehend, is produced by the conclusiveness of the return, which is of such high regard, that generally no averment is to be received against "it; and it cannot therefore be shown, that the goods were actually seized. (Com. Dig. Return G.) In Ward v. Hauchett, 1 Keble, 551, it was determined, that where the sheriff takes a bond for the money, it is payment of the debt as to the judgment creditor; and, further, that if he seizes the goods and leaves them in the possession of the debtor, by the direction of the judgment creditor, and under an agreement with the creditor, it is in strictness, satisfaction of the judgment: and although the court would not, in that case, compel the sheriff to return the execution, to enable the party to have an audita querela, yet it was, said, that if he had suffered damage on account of the writ not having been returned, he might maintain an action for it. The sum of the matter, therefore, appears to be this: Where the goods are actually seized, the property vests in the sheriff, and the debt becomes satisfied, as to the judgment creditor, who can look only to the sheriff, unless where the latter chooses to return nulla bona, and there he becomes answerable to the judgment creditor for his false return, who may also levy the same goods on another execution. Here the sheriff returned, that he had levied and left the goods in the possession of the debtor, and the judgment must therefore be treated, as having been at one time actually satisfied. Whether it might not be restored to its former incidents, by the agreement of the parties, as between themselves, is not the question; assuredly it could not be restored so as to deprive third persons of an advantage which they had gained, by its having at any period been discharged; consequently, its lien on this land is gone.
Judgment affirmed.