[PHILADELPHIA, FEBRUARY 13, 1832.]

## WOOD *against* VANARSDALE.

### APPEAL.

R. issued an execution against V. and levied on personal property. While the levy was pending, V. made a general assignment to M. and N., who paid the amount of the execution to the sheriff, who paid it over to R. the plaintiff. R.'s attorney afterwards, at the request of M.'s attorney, but without the authority of R., assigned the judgment to M., who assigned it to O. Afterwards O.'s attorney directed the sheriff to levy on V.'s real estate. The sheriff returned no levy on the personal estate of V., but a levy on his real estate, which was afterwards sold under an elder judgment. After payment of prior incumbrances, there remained a balance in Court which was claimed by O., by. virtue of R.'s assignment to him. *Held*, that the payment to the sheriff by M. and N. was a satisfaction of the judgment; that no assignment of it by R.'s attorney, without his authority, could resuscitate it, and consequently, that O. the assignee, was not entitled to the balance of money in court.

To constitute a good levy on personal property, it is not necessary, that an inventory should in the first instance be made of it, or that the sheriff should immediately remove the goods, or put a person in possession of them. If they are within the power and control of the sheriff when the levy is made, it will be good, if followed up within a reasonable time by his taking possession of them in such a manner, as to apprize every body of the fact, that they have been taken in execution.

THIS was an appeal from the decision of the District Court for the City and County of *Philadelphia*, relative to the distribution of money arising from the sale, by the sheriff, of certain real estate belonging to the defendant. The property was sold under a writ of *venditioni exponas*, issued by the plaintiff in this suit, for the sum of nine thousand six hundred and seventy-five dollars, of which there remained for distribution, after payment of liens and judgments, according to their legal priority, the sum of four hundred and thirty-nine dollars and seventy-five cents. This sum was claimed by *John Moss*, assignee of *Richard Rowley*, a judgment creditor, but the court rejected his claim, upon which he appealed to this court.

The following are the material facts of the case :

*Richard Rowley*, on the 1st of *March*, 1827, obtained two judgments against the defendant *Vanarsdale*, in the District Court for the City and County of *Philadelphia*, as of *March* Term 1827, one of them No. 411, for one thousand and thirty-one dollars and forty seven cents, payable in one year; the other, No. 412, for one thousand four hundred and eighty-three dollars and forty seven cents, payable in three equal instalments of four, eight, and twelve months. The first instalment of the last mentioned judgment was paid. When the second became due, the plaintiff, *Rowley*, on the 20th of *November*, 1827, is-

(Wood v. Vanarsdale.)

sued an execution and delivered it to the sheriff, who levied upon the goods of the defendant, as was alleged by *Rowley*, but denied by his assignee *Moss*.  The circumstances attending the alleged levy were stated in the deposition of *William Heston*, a sheriff's officer, which was the only evidence on the subject.  From this deposition which was objected to by *Moss*, as inadmissible, but admitted by the court, it appeared that a *fieri facias* in the case of *Rowley* v. *Vanarsdale*, was placed in his hands by the sheriff, on the 20th of *November*, 1827. In the afternoon of that day, he went to the defendant's store, at the corner of Arch and Seventh streets, and informed him that he had an execution against him, which he requested him to satisfy.  The defendant being unable to satisfy it, the deponent immediately levied on the goods in the store, of which there appeared to be a large amount.  After the levy had been made, the deponent had a con- versation with the defendant, who stated, that a short time before, he had a conversation with the counsel of the execution creditor, who had induced him to believe that he would not proceed in that way. He added, that if he had suspected such a course would have been pursued, he would have disappointed him by making an assignment ; that he had been, and then was straining every nerve to pay his cred- itors, and they knew it, and that he was not retaining a single dollar for himself.   After the deponent had made the levy as above stated, and had the above mentioned conversation with the defendant, he returned to the sheriff's office.  On the same afternoon he was direct- ed by the sheriff to go to the defendant's house in Spruce street.  He went there about eight o'clock in the evening, when he saw the de- fendant and levied upon his household furniture : there was a good deal of elegant furniture in the house at the time, and deponent took an inventory of the principal part of it.  He took no inventory of the goods in the store ; left no person in possession of them, and was di- rected by the sheriff to leave no person in possession of them.   None of the store goods, or household furniture were removed.   The alleg- ed levy remained in the situation thus described until *Vanarsdale* on the 22nd of *November*, 1827, made a general assignment of his pro- perty to *Thomas C. Maybury*, and *Joseph L. Moss*, in trust for the benefit of his creditors.   On the 26th of the same month, the assig- nees of *Vanarsdale*, who were creditors and provided for by his as- signment, paid the amount of the execution to the sheriff, who paid it over to the plaintiff's attorney, and on the 29th *Morgan J. Rhees*, Esqr. the attorney of the plaintiff *Rowley*, executed an assignment of the judgment, so far as respected the second instalment, to *Thomas C. Maybury*, who assigned it to *John Moss*.  Mr. *Randall*, the attor- ney of *Moss*, directed the sheriff to levy on the real estate of the de- fendant.   The sheriff of his own accord, and without directions from any one, returned no levy on the personal estate of the defendant, but a levy on his real estate, which was afterwards sold under a prior judgment.  *Moss* claimed to be paid out of the proceeds of sale, the

(Wood *v.* Vanarsdale.)

amount of the second instalment of the judgment, No. 412, by virtue of the assignment to him, contending that it was unsatisfied. This was opposed by subsequent judgment creditors of the defendant, and by *Rowley,* who held the judgment, No. 411, of the same date as the other, on the ground that the assignment to *Moss,* was made under mistake, without consideration, and passed no interest to the assignee; and also on the ground, that the proceedings which had taken place under the execution issued for the second instalment of that judgment, amounted to satisfaction.

The District Court ordered the money remaining in court to be distributed among the cotemporaneous and subsequent judgment creditors of *Vanarsdale,* from which order *Moss* appealed to the Supreme Court, where he assigned the following specifications of error in the proceedings in the court below, *viz.*:

*First.* The court below erred in admitting the deposition of *William Heston.*

*Second.* The court below erred in refusing to permit *John Moss* to receive the amount of the second instalment of the judgment of *Richard Rowley,* assigned to the said *Moss.*

*Third.* The court below erred in directing the balance of money in court to be distributed among the other judgment creditors of the defendant to the exclusion of the said *John Moss.*

*J. Randall,* for the appellant.

*D. P. Brown,* contra.

The opinion of the court was delivered by

KENNEDY, J.—This case is considered as falling within the principle decided by this court in the case of *Hunt* v. *Breading,* 12 *Serg. & Rawle,* 37.

On the 20th of *November,* 1827, *Richard Rowley,* issued a *fieri facias* upon his judgment of fourteen hundred and eighty three dollars, and seventy five cents, against *Vanarsdale,* with directions to the sheriff, to levy the second instalment, or one third of the amount of the judgment which had become payable, the first instalment having been paid. This writ of *fieri facias* was put into the hands of the sheriff to whom it was directed on the same day. He immediately called at the store of the defendant in the execution, told him of its being in his hands, and the defendant signifying no disposition to pay it, he made a levy upon the goods in the store, of more than a value sufficient to satisfy the amount of the execution, of which he gave the defendant notice. He also levied upon some part of the defendant's household furniture, of which he made an inventory, but made no inventory of the goods levied on in the store; nor did he remove any of them. The plaintiff, upon the sheriff's telling him what he had done, told him that he need not remove the goods without further orders. The sheriff did not shut up the store, nor did he put any one in possession of it. After the sheriff made this

(Wood *v.* Vanarsdale.)

levy, the defendant in the execution, upon the 2nd day of *November,* made an assignment by deed of all his property, including the goods levied on, to *Thomas C. Maybury* and *Joseph L. Moss,* in trust for the payment of his creditors therein mentioned. *Maybury* and *Moss* were among the number provided for by the deed of assignment, and on the 26th of the same month paid to the sheriff the amount of the execution, and he paid it over to the plaintiff's attorney. Afterwards, on the 29th of the month, the plaintiff's attorney, at the solicitation of *Maybury,* or his attorney Mr. *Randall,* assigned the judgment so far as it had been paid by *Maybury,* to him, and he again assigned it to *John Moss,* the father of *Joseph L. Moss. Rowley's* attorney, however, told *Maybury* or his attorney, at the time he made the assignment, it would do him no good, and it must be understood that it was not to prejudice his client *Rowley* in the collection of what was still owing to him. After this Mr. *Randall,* as the attorney of *Maybury* or *Moss,* without any regard to the levy which had been made on the goods under the execution, directed the sheriff to levy on the real estate of the defendant *Vanarsdale;* and he accordingly did so, and made return of the same, but no return of the levy upon the goods. The real estate was afterwards sold upon another execution at the suit of *Wood* for nine thousand six hundred and seventy five dollars, a sum not sufficient to pay the whole of the balance coming to *Rowley* upon his two judgments and the prior liens.

*Vanarsdale* was displeased with *Rowley* for issuing his execution, and told the sheriff when he informed him of it, that if he had known that *Rowley* intended doing so, he would have prevented him from getting any of his personal property, for he would have made an assignment of it for the purpose of satisfying some of his creditors. *Rowley* by issuing his execution as he did, secured the payment of the second instalment which had become payable upon his judgment against *Vanarsdale* out of the defendant's personal estate, and thereby made the real estate the better security for the residue of that, and the amount of his other judgment of ten hundred and thirty-one dollars and forty-seven cents, which had some months then to run before execution could be issued. *Maybury* was interested in making the most out of the property which had been assigned to him and *Moss* by *Vanarsdale* that he might get payment of his debt. It is therefore easy to see the motive which he had for paying the money coming to *Rowley* upon his execution. The property assigned to *Maybury* was bound for the payment of *Rowley's* execution, and to prevent a sacrifice of it and all further interference with it by the sheriff, he paid the execution. He could be no loser by doing so, as the personal property liable to the execution was of much more value than the amount of it, and he would have a right to reimburse himself the amount of the money paid to the sheriff out of the first moneys that should arise from the sale of the goods to be made by him. This money was not paid to the sheriff, as has been contended by *Moss's* counsel, under an agreement that *Maybury* should have the judg-

ment to the amount of the execution assigned to him as a security for obtaining a reimbursement of the money. On the contrary, it appears to have been paid in order to prevent a sale of any of the goods being made by the sheriff, who told them before the payment of the money and after the levy, that unless it were paid he would proceed to make it by sale of the property; and upon this it was paid without even the presence of the plaintiff in the execution or his attorney, or any stipulation for an assignment. The assignment was not made until three days afterwards, when it was done as already mentioned, at the request of *Maybury's* attorney. There is every reason to believe that *Rowley* wished to have as much of his claim against *Vanarsdale* paid out of his personal property as he could, and thus improve the security which he had upon the real estate for the balance. No doubt this was his principal reason for issuing his execution, and it is therefore not likely that *Rowley* would have consented to have taken his money, for which he issued the execution, and have assigned so much of the judgment, keeping it still open and continuing it as a lien upon the real estate of the defendant. He does not appear to have ever given his assent to any such arrangement. Nor do I understand that even his attorney agreed to it as now claimed upon the part of the assignee. I consider the money then paid to the sheriff, as paid in satisfaction of the execution, and that the judgment upon which it was issued was thereby satisfied *pro tanto,* and no subsequent assignment made by *Rowley's* attorney without an authority from him to do so, could resuscitate this satisfied and extinguished part of the judgment to the prejudice of *Rowley's* rights. An agreement for this purpose entered into between *Rowley, Vanarsdale* and *Maybury,* might have been sufficient, but certainly not without *Rowley's* consent or authority could his right to have the execution satisfied out of the personal property, and the real estate of the defendant relieved from so much of his claim, be set aside and thrown back again upon the real estate which was not of sufficient value to satisfy the balance of *Rowley's* judgments. Even if there had been no levy upon the store goods of the defendant in the execution, I consider the payment of the money a satisfaction of the execution, and an extinguishment of the lien of the judgment for so much, and that the decision of the court on the appropriation of the money arising from the real estate, was right and ought to be affirmed.

But I also think there was a levy on the goods of *Vanarsdale* in this case sufficient to bind *Maybury.* To constitute a levy upon personal property it is not necessary that there should first be an inventory of it made out; nor is it necessary, perhaps, in all cases, that an inventory should be made out at any time. Neither is it necessary that the sheriff should remove the goods levied on immediately; nor that he put a person in every case, immediately into the possession of them; a reasonable time must be allowed for this, which may be more or less, to be judged of according to attending circumstances. A levy, however, upon such property, cannot be made without the

(Wood *v.* Vanarsdale.)

sheriff has it within his power and control, or at least within his view; and if having it so, he makes a levy upon it, it will be good if followed up afterwards within a reasonable time, by his taking possession in such manner as to apprise every body of the fact of its having been taken in execution. The sheriff in this case was in the store, when he made the levy upon the goods, having them full in his view, and completely within his power. Immediately after this was done, within a day or two, *Maybury*, with full knowledge of the levy, took an assignment of the goods from *Vanarsdale*, and before the sheriff had had time sufficient to have made out an inventory, and then when the sheriff talked of proceeding with his levy to consummate it, and make a sale, unless the money were paid, *Maybury* proposed paying the money, and in two or three days afterwards actually did pay it, so that he prevented the sheriff from making an inventory, and taking possession of the goods, which we may presume would have been done, if *Maybury* had not interfered as he did. Under these circumstances, if *Rowley*, the plaintiff in the execution, had even agreed to have assigned to *Maybury* his second instalment due upon the judgment for which he had issued the execution, upon *Maybury's* paying the amount of it to him, and the arrangement had been carried into effect, without any stipulation or agreement that *Maybury* should be at liberty to change the levy from the personal to the real estate of the defendant in the execution, I think that *Maybury* could not have done so. The course which *Rowley* intended pursuing, was against the personal property; this was clearly and unequivocally indicated, and commenced by the sheriff under the execution, and all made known to *Maybury*; and under an assignment, without more to him, he would have been bound by what *Rowley* had caused to be done, and to complete that, and obtain the fruits of it, was all that it could have been said was assigned to him. The levy, in short, was a satisfaction of the judgment, and the assignment at most could only give to *Maybury* the benefit and fruits of the levy. Hence he was not at liberty to relinquish the levy on the personal estate, and to apply that personal estate under the assignment which he had from *Vanarsdale* to the payment of his own debt against *Vanarsdale* for which he had no lien upon *Vanarsdale's* real estate, or if he had any it was subsequent to *Rowley's*, and to seek satisfaction of the execution assigned to him, out of *Vanarsdale's* real estate. This view of the case assimilates it to the case of *Hunt* v. *Breading*, 12 *Serg. & Rawle*, 37. But it is said that the levy on personal property in the case of *Hunt* v. *Breading*, *was returned* by the sheriff and was afterwards set aside by the agreement of the defendant in the execution, and the plaintiff and *Hunt*, to the prejudice of *Breading*. The return of the levy can make no difference, as appears by the decision of the Supreme Court of *New York* in the case of *Wood* v. *Torry*, 6 *Wendall*, 562.

The judgment of the court below is affirmed.