## TAYLOR'S APPEAL.

The return of "levied" on personal property is not conclusive evidence of satisfaction.
A judgment creditor is not precluded by that return from coming on the proceeds of the debtor's land in court for distribution, where the property had been restored to the debtor on a forthcoming bond, but not delivered back to the sheriff.

APPEAL by Joseph Taylor & Sons from the decree of the Court of Common Pleas of Westmoreland county, confirming (after correcting the same) the second report of the auditor appointed to appropriate the money arising from a judicial sale of the real estate of Judah Case, under a writ of alias venditioni exponas, to May term, 1845.

The facts of the case, as stated in the reports of the auditor, are in substance as follows:—

Taylor & Sons having a judgment against Judah Case, of August term, 1843, No. 97, issued a writ of fi. fa. thereon, to February term, 1844, under which a levy was returned on certain merchandise, furni-

ture, horses, and wagons, which said property had been previously levied upon, under other executions to May term, 1843, Nos. 57, 95, 96, and 108; and (as appeared by the return of the sheriff to said writ) "was appraised; and, upon being exposed to sale, two-thirds of the appraised value thereof not having been bidden for the same, was restored to the defendant, upon his forthcoming bond, under the stay law." Taylor & Sons issued a writ of venditioni exponas to May term, 1844, No. 142, to sell the property levied upon under their fi. fa. to February term, 1844, to which the sheriff made the following return:

"I levied on the goods and chattels of defendant, Judah Case, as per schedule annexed, which, at the request of the defendant, were appraised, as per same schedule, and, on the 20th day of April, 1844, exposed to sale, according to law, and, two-thirds of the appraised value thereof not being bidden for the same, was delivered to the defendant, he having given bond, with surety in double the amount of appraisement for the same, or other property equal in value shall be forthcoming and delivered at the expiration of twelve months from the date thereof, &c."

The lot of merchandise was valued, in this schedule, at $350, and the balance of the property at $450 50, making the whole valuation $800 50.

At the expiration of the year, Keyser issued a venditioni exponas to August term, 1844, to sell the property levied upon under the executions to May term, 1843; and the sheriff, having demanded the goods, received a part only of those which had been levied upon, appraised, and restored to the defendant upon his bond. The store goods returned to him were appraised at the sum of $133 86½. These goods were sold by the sheriff, and the proceeds of the sale were appropriated by the auditor, in his first report, to the judgment of Keyser, of August term, 1841, and to an execution issued by Shea & Pennock upon a judgment in their favour for costs, of August term, 1844. So much of the other property levied upon as was returned to the sheriff was also sold by him, and the proceeds applied by the same report to the judgments above stated.

The property which had been levied upon by virtue of the execution of Taylor & Sons, and not returned to the sheriff, or sold, (exclusive of the store goods,) had, in the schedule attached to their venditioni exponas, to May term, 1844, No. 142, been appraised at $171 00. And the auditor, in his second report, (the first having been referred back to him,) deducted this sum, together with $216 13½ cents, the difference between the appraisement of the store goods, as above stated,

from Taylor's judgment. In his first report, the auditor appropriated the money to the judgments against Case, according to their priority.

The question in this court was, whether the appellants retained their lien on the real estate against other creditors, after having levied upon personal property of the defendant, which was done under their execution to February term, 1844, and the return of the sheriff thereon stated the delivery to the defendant on his bond, under the act of 1842, pp. 408, 409, which provides for a bond to the sheriff for the forthcoming of the property at the expiration of the year.

*Beaver*, for appellants.

The levy on the personalty did not affect the lien on the real estate, unless it produced satisfaction, 2 Ham. Ohio, 297; nor are we responsible for any waste of the property, when we are not the author, but the law which allows possession to the defendant. The bond will no doubt enure to any creditors injured by the act.

*Foster*, contrà.

Taylor tied up the property from the other creditors, and he must be considered as having received so much on his execution as he had secured to him by the bond. Taylor permitted the property to be wasted.

The opinion of the court was delivered by GIBSON, C. J.

In England, and perhaps here, a judgment creditor may be concluded by the election of a particular execution. He cannot have a capias ad satisfaciendum after an elegit, or regularly a fieri facias after a capias ad satisfaciendum, or even a second execution of the same nature till the first be spent. Still a party who has only sued out an execution, may abandon it before it is executed, and sue out another of a different stamp. But where the debtor's body has been taken, the creditor's recourse to the land during the debtor's life, and actual confinement, is gone, and with it his lien. The judgment is paid by the highest satisfaction known to the law. Yet an elegit executed on the goods, being, in that case, effectively no more than a fieri facias, does not preclude the creditor from suing out a capias ad satisfaciendum, or extending the land, (see Hobarts' Rep. 58,) which is analogous to the practice here. We hold that, to levy a fieri facias on the chattels does not discharge the land, because the writ to enforce the judgment against it is the same, and the satisfaction the same. In the same way, the conusee of a statute merchant, or staple, or of a recognisance in the nature of a statute staple, may take the body, goods, and land, at once,

or consecutively, because they are alike liable to execution under the laws by which those securities were created. Now, as all the debtors properly are alike subject, with us, to execution by the same writ, a levy on chattels does not relax the creditor's hold on the land; and so the matter has been treated in practice. Nor is the return, if levied to the amount of debt and costs, whether true or false, conclusive evidence, as it is in England, of satisfaction, which discharges the judgment, and fixes the sheriff. There the plaintiff in the execution on which the goods have been sold, gets the proceeds of them, and the plaintiff, in an earlier execution, has no other remedy than an action for the misfeasance; but here the return is open to explanation by evidence of subsequent circumstances, the proceeds of chattels being distributable according to priority of lien, like the proceeds of land. According to Little v. Delancy, 5 Binney, 272; and Beale v. Worrell, 11 Serg. & Rawle, 299; a levy is satisfaction, so far as it has, or might have, produced it; but where the proceeds of a venditioni exponas have fallen short, or been applied to prior executions, the plaintiff cannot proceed against the sheriff on the conclusiveness of his return, but must have recourse to the debtor's other property. No more was determined in Hunt v. Breading, 12 Serg. & Rawle, 37, than that an execution creditor, whose levy has kept others at bay, shall not abandon it and assign his judgment for the consideration of payment, as an existing lien on the debtor's land. Had he been deprived of the fruit of his execution by any thing else than his own act, the consequence would have been different; but it was held, that no exception to the English rule was to be allowed for the gratification of an execution creditor's caprice. On this ground it is, that the rescue or escape of a debtor in execution does not preclude the creditor from suing out another writ, while a voluntary discharge of his person is a discharge of the debt. But it has never been thought that a judgment creditor is bound to follow out a levy on land, which has been found sufficient to pay, by its profits, the debt in seven years. H has been suffered to bide his time, and come upon the proceeds of that, or any other tract, when sold on any other execution. If, then, the general lien of a judgment be not discharged by a levy on a particular tract, which is a chattel, for payment of debts, why should it be discharged by a levy on what is a chattel interest for all purposes? It has been urged, that the legislature intended, in cases like the present, to throw the execution creditor on his forthcoming bond, either exclusively, or till it should be exhausted, on the equitable principle, that he who may have recourse to two sources of payment must not take satisfaction in a way to disappoint another who can have recourse only to one of them. That

principle, however, being one of mere benevolence, is never enforced at the expense of a legal right; and it is a common-law principle that a creditor may apply all or any of his securities at his option. The object in giving the debtor a stay of execution on his tender of a forthcoming bond, was not to provide a security in aid of the general creditors, but to indulge the debtor with the least possible risk and inconvenience to the seizing creditor. What equity, then, have they to say, he shall confine his recourse to the personal security of the bond, in order to make room for them in the distribution of the proceeds of the land? It was not given for their benefit, nor have they been prejudiced by it. If he were to be confined to it, execution, which is the end of litigation, would be the beginning of it; for he might have to go through the same process with successive obligors to the end of the chapter. The legislature never contemplated such a consequence. On the contrary, as the law favours the vigilant, and not the slothful, we must suppose the intent was to promote the justice of the case, which is all on the other side. The sum of the matter is, that, as Taylor & Sons were deprived of the fruit of their levy, not by any thing they did or could have avoided, but by the act of the law, they are not to be deprived also of their lien on the land.

> Decree reversed; auditor's second report set aside, and first report confirmed, with directions to pay the appellants' judgment in full.