[LANCASTER, JUNE 3, 1829.]

## EBERLE *against* MAYER.

### IN ERROR.

An order, given by an execution creditor to the sheriff, to stay all further proceedings on his execution, at his risk, until further directions, is a waiver of his priority, in favour of a second execution, received by the sheriff during the continuance of the stay.

ERROR to *Lancaster* county.

The cause was argued in this court by *Parke,* for the plaintiff in error, who cited, *Levy* v. *Wallis,* 4 *Dall.* 167.   *Chancellor* v. *Phillips,* 4 *Dall.* 213.   *Lewis* v. *Smith,* 2 *Serg. & Rawle,* 159.  1 *Browne,* 367.   *United States* v. *Conyngham,* 4 *Dall.* 358.  2 *Browne,* 333. *Cowden* v. *Brady,* 8 *Serg. & Rawle,* 510.   *Clow* v. *Woods,* 5 *Serg. & Rawle,* 280.   *Hamilton* v. *Russell,* 1 *Cranch,* 316.   *Martin* v. *Mathiot,* 14 *Serg. & Rawle,* 215.   *Whipple* v. *Foot,* 2 *Johns. Rep.* 422.   *Storm* v. *Woods,* 11 *Johns. Rep.* 110.  3 *Cowen,* 422.  8 *Johns. Rep.* 16.  17 *Johns. Rep.* 274.

*Ross, contra,* cited, 2 *Yeates,* 434.   *Perit* v. *Wallis,* 2 *Yeates,* 524.  *Knox* v. *Summers,* 4 *Yeates,* 477.   *Water's Executor* v. *M'Clellan,* 4 *Dall.* 208.   *Lessee of Hughes* v. *Dougherty,* 1 *Yeates,* 497.

The circumstances of the case are fully detailed in the opinion of the court, which was delivered by

(Eberle *v.* Mayer.)

Smith, J.—This is a writ of error to the Court of Common Pleas of *Lancaster* county. The matter came before the court on a feigned issue, directed to try the question, whether an execution, issued by the plaintiff in error, against a certain *Jacob Mayer*, jr., was entitled to be first paid out of the money raised by the sheriff, on the sale of the personal property of the said *Jacob Mayer*, jr. It was tried on the 22d of *January*, 1827, and a verdict and judgment rendered for the defendant. On the trial, it appeared, that *Jacob Mayer*, the defendant in error, on the 9th of *June*, 1819, had issued a *Fieri Facias* against *Jacob Mayer*, jr., and that on the 17th of *July*, 1819, a levy was made in consequence of it, on seven head of cattle, two cows, four hogs, twenty-seven dozen sheaves of wheat, also, on rye, hay, and three acres of corn in the ground; to which were added, on the 21st of *October*, 1819, four acres of rye, and two acres of wheat, then in the ground: That on the 25th of *October*, 1819, *Jacob Mayer*, the plaintiff in the above stated execution, but now defendant in error, gave written directions to the sheriff, *"to stay all proceedings in the above recited execution,* AT HIS RISK, *until further directions."* On the 3d of *November*, 1819, *Ann Eberle*, the plaintiff in error, had a *Fieri Facias* issued against *Jacob Mayer*, jr. which was levied, as *William Taylor*, the deputy sheriff, declares, on eight or nine head of horned cattle, a flock of sheep, eight hogs, and all the property out of doors. The memorandum of this levy, he says, was left in the sheriff's office, and it cannot now be found: That on this same day, he saw a written advertisement put up in a public inn, in the town of *Manheim*, signed, *"Jacob Mayer,"* for the sale of his personal property on the next day. The sheriff, however, sold the personal property of *Jacob Mayer*, jr. on the first *Fieri Facias*, delivered to him on the 9th of *June*, 1819. The court, after the sale, granted a rule on *Jacob Mayer*, the defendant in error, to show cause, why *Ann Eberle's* execution should not be paid out of the money arising from the sale of this property. This rule was subsequently, on the 25th of *September*, 1820, argued, and held under advisement by the court, till the 23d of *December*, 1820, when the court directed an issue to try this question, in which *Ann Eberle* should be the plaintiff, and *Jacob Mayer* the defendant. On the trial, the plaintiff submitted to the court the following points, and requested their answers in writing, to wit:—

"1. That if the jury believe, from the evidence, that the defendant in this case, by his proceedings, on his judgments and execution against *Jacob Mayer*, jr. the delay, and order of stay, at his risk, &c. intended to screen the property of *Jacob Mayer*, jr. from his other creditors, the verdict should be for the plaintiff.

"2. That the delay of sale upon *Jacob Mayer's* execution for upwards of five months, leaving the property with the defendant, without a return of the execution, accompanied by a schedule of the property, and permitting him to use, and eventually to ad=

(Eberle *v.* Mayer.)

vertise it for sale, as his own, is a fraud in law, and the verdict must be for the plaintiff, particularly the levy being on household furniture.

"3. That the order of *Jacob Mayer*, the first execution creditor, to the sheriff, of the 25th of *October*, 1819, to stay all proceedings upon his execution, at his risk, until further directions, is a waiver of his priority in favour of a subsequent execution, put into the hands of the sheriff during the pendency of the stay. That such order is a legal fraud as to subsequent executions."

The court, in their charge, (and no other answers were given,) stated, that there were two points to be considered in this case: 1st. The operation of the order *to suspend;* and 2d. The allegation of *fraudulent intention* in giving it. And the court then added, "We certainly are not warranted in going further than the Supreme Court have gone in the cases heretofore decided by them; but, think that, conformably to these decisions, I should not be authorized to instruct you, that the order of *Jacob Mayer*, the first execution creditor, to the sheriff, of the 25th of *October*, 1819, to stay. *all proceedings* upon his execution, AT HIS RISK, until further directions, is, of itself, and without more, a waiver of his priority in favour of a subsequent execution, put into the hands of the sheriff during the pendency of the stay, or that such order is a legal fraud as to subsequent executions" To this charge the plaintiff excepted, and he now contends, that it was erroneous, and that the first execution was, in this case, a legal fraud as to the subsequent execution. In order to determine, whether a legal fraud existed in this case, it will be necessary to state what appeared in evidence, and was not contradicted, and is spread on the record under consideration; and in doing so, it is absolutely important to state, and attend to *dates*. *Jacob Mayer*, then, on the 5th of *June*, 1819, entered a judgment on a bond, dated the same day and year, against *Jacob Mayer*, jr. conditioned for the payment of one hundred pounds, *on the 5th of June*, 1820; but, *two days* after, on the 7th of *June*, 1819, he entered satisfaction on this judgment. On the same 7th of *June*, 1819, he entered another judgment on another bond, dated the same last mentioned day, conditioned for the payment of one hundred and eighteen pounds fifteen shillings, but payable *on demand*, against the said *Jacob Mayer*, jr. From the record, it appears, that *Ann Eberle* had brought a suit against *Jacob Mayer*, jr., in which she obtained *on the 7th of June*, 1819, by an award of arbitrators, a judgment for one hundred and sixteen dollars and twenty-nine cents. Then, on the 8th of *June*, 1819, the day *after Ann Eberle* had obtained her award, *Jacob Mayer* issued an execution on his judgment of the 7th of *June*, 1819, and delivered the same to the sheriff on the 9th of *June*, the next day. On the 21st of *October*, 1819, *Jacob Mayer*, jr. called on the sheriff, and requested to know, whether he could not sell his goods himself, when he was told, it was not the legal way of proceeding. Five days after this inquiry,

(Eberle *v.* Mayer.)

on the 25th of *October*, 1819, *Jacob Mayer*, the plaintiff, left the order with the sheriff, desiring a stay of proceedings on his execution against *Jacob Mayer*, jr., as already stated. On the 3d of *November*, 1819, *Ann Eberle's* execution was delivered to the sheriff; and then, two days after, on the 5th of *November*, 1819, *Jacob Mayer* desired the sheriff to proceed on his execution, and asked the sheriff whether it would not do, to go there, and sell under the advertisement *they* had put up. In consequence of these directions, the property was sold, it having been all the time in the possession of *Jacob Mayer*, jr. When, therefore, we take an attentive view of all the proceedings and acts of the parties, the conduct of *Jacob Mayer* must appear irreconcilable with good faith; and, I think, the court would have been warranted, under the circumstances, in assuming, that the only question was, whether the facts given in evidence amounted to a legal fraud, as to the subsequent execution? And, that this was for the court to decide. It is true, that merely leaving the property levied on in the possession of the defendant in the execution, though with the plaintiff's consent, is not, *per se*, fraudulent, either as to subsequent execution creditors, or purchasers; but, where the plaintiff directs the sheriff, as here, to delay the execution, or sale, the law is otherwise. All the cases cited, (and I have examined them all,) in *Yeates' Reports*, and in *Johnson's* and *Cowen's Reports*, and also the *English* cases, clearly establish the principle, that where the creditor interferes and directs a delay of sale, and leaves the goods with the debtor, in every such case, a second execution coming in, will have a preference. I then think, that conformably to the decisions on the subject, the court below would have been authorized to instruct the jury, and that it should so have instructed them, that the order of *Jacob Mayer*, of the 25th of *October*, 1819, to the sheriff, to stay all further proceedings on his execution, at his risk, until further directions, was, of itself, a waiver of his priority, in favour of the second execution, received by the sheriff, during the pendency of the stay; in other words, that by the order, the plaintiff's execution must be considered as dormant, and constructively fraudulent, as against the subsequent execution. The evidence here, as in the case in 17 *Johns.* 276, warrants the inference, that the plaintiff issued his *Fieri Facias*, not with an absolute intention of collecting his debt, but partly, at least, with a view to cover the property of the debtor for his use. The judgment is, therefore, reversed, and a *venire facias de novo* awarded.

Judgment reversed, and a *venire facias de novo* awarded.