# Keyser's Appeal.

Where personal property in a store is levied on under an execution, and under an arrangement between the plaintiff and defendant, the store is left open, and the clerk of defendant is authorized by the plaintiff to continue to sell at private sale, as usual, and this is continued till after the return day of the writ, the proceeds of sale in the mean time, at the instance of the sheriff, being paid to the plaintiff by the clerk, who was to be paid by him; the execution will be postponed to subsequent executions.

The mere leaving, in the possession of defendant, until sale, goods levied upon, with the permission of plaintiff, will not divest the lien of the execution, unless there be fraud; and an indorsement on the execution by the plaintiff's attorney of "The levy to be at the risk of the plaintiff," understood to mean, that the property levied might be left until sale with the defendant at the risk of the plaintiff.

APPEAL from the decree of the Court of Common Pleas of *Franklin county*.

A *fi. fa.* was issued on the judgment of Richards *vs.* Garlin, issued 3d April, 1849, returnable on the 9th of April. On the same day, but subsequently, another execution was issued in favor of Keyser, returnable also on the 9th April. A third execution issued on the 10th April, returnable to the August term, in favor of The Bank of Chambersburg.

On the two first of these writs, it was indorsed by the attorney of the plaintiffs, "levy at the risk of the plaintiff." On the third

execution was indorsed, "the levy made by the sheriff on this writ is to be at the risk of the plaintiff, and of F. Smith and Jacob Heck, the indorsers on the note on which the judgment was obtained."

Another execution was subsequently issued for the county of Franklin, on which the property, the proceeds of which were in dispute, was sold; but this execution was subsequently set aside.

The property levied upon consisted of drugs, medicines and other personal property.

It appeared in evidence that Richards told the sheriff that the store *was not to be closed*, and that he desired the clerk of defendant to attend to the store. It appeared that Richards told the clerk he would be paid out of the proceeds of the store. The store continued open till about the 21st of April, about twelve days after the return day of the two first executions.

The nett amount of sales, during the interim, deducting payments, amounted to about $77; above $60 of this, the sheriff directed to be paid to Richards, the plaintiff in the execution. The sheriff never received any orders from Richards not to sell. He understood there was to be a sale, but did not know when. The store was closed at the instance of the person who had charge of the execution for the county of Franklin—when the sheriff got the key of the store—which he had not had before.

The court decreed the money in the sheriff's hands to be applied first to the execution of Richards, and the balance to the execution of Keyser.

This decree was the subject of execution.

The case was argued by *J. Nill* for Keyser, *F. Smith* for the Bank, and by *W. Reilly* for Richards.

The opinion of the court was delivered by

ROGERS, J.—It seems to be conceded by the learned judge who ruled this case, that the execution of Dr. J. C. Richards was postponed in favor of subsequent execution creditors. Indeed it is difficult to come to a different conclusion. It appears in evidence that by an agreement between Richards and Garlin, the defendant in the execution, the result of a previous understanding, that the store, on which his levy was made, was to be left open, and that the clerk of the defendant was to sell the goods in the same way as before the levy. Richards indorsed on the execution, "This levy at the risk of the plaintiff." In pursuance of this agreement, the store was left open, and the goods were sold at private sale, as before the levy, until the 21st April, twelve days after the return day of the writ. The private sales during that time amounted to $107 00. Of this, $60 00 was paid directly to Richards at the instance of the sheriff, and without passing through

his hands.   The clerk, by the agreement, was employed by Rich-ards, and was to be paid by him.

Property taken in execution must be disposed of by public and not by private sale.   To permit it to be sold otherwise would lead to fraud, and hence such an arrangement, although no actual fraud may be intended, is deemed fraudulent, and consequently postponed the execution creditor in favor of other executions, though subsequent in date.   By this arrangement there was a postponement of the sale, until after the return day of the writ. The control and direction of the writ was wantonly taken out of the hands of the sheriff, but no notice whatever was given of the sale.   In Gibbs *vs.* Neely, 7 *W.* 305, it is ruled, that even a sale, after five days public notice, with the assent of the debtor, is fraudulent, as against his other execution creditors.   But here the goods are sold at private sale, without any notice whatever, in which respect it is much stronger than Gibbs *vs.* Neely.   But Bingham *vs.* Young, 10 *Barr*, 395, cannot be distinguished in principle from this case.   In Bingham *vs.* Young it is ruled, that where an execution creditor procures a special deputy, to be ap-pointed by the sheriff, and the goods levied on in a store are sold by him and the defendant at private sale, until other executions are left with the sheriff, the prior execution is postponed.   In Bingham *vs.* Young, as in this, the sheriff appointed a deputy, who, with the defendant, made private sales.   There the public sale was before, here, after the return day of the writ; and the store was kept open for private sales some days, here, eighteen days.   In neither case had the sheriff any control or management of the sales.   In all essential respects, that case is identical with this.

Did the question rest here, the case would be attended with no difficulty whatever.   This the court expressly admitted, but they are of opinion, the first execution creditor is not postponed, because the subsequent execution creditors are in *pari delicto*, or, as Judge Watts terms it, in the same boat.   If the premises be correct, I admit the conclusion is inevitable.   Are they then in *pari delicto?*   In the first place, we must throw out of view that each of the executions contains the same indorsement, viz: "This levy at the risk of the plaintiff."   It must be remembered, that Dr. Richards' execution is not fraudulent as against subsequent executions, because of that indorsement, (for if it was, there would be no gainsaying the defendant's proposition,) but because of the agreement between Dr. Richards and the defendant, Garlin. Such an indorsement is understood to mean nothing more than that the property, until sale, might be left with the defendant, at the risk of the plaintiff,and not at the risk of the sheriff; that if the property is not produced on the day of sale, so far as regards the plaintiff, the sheriff is released, and further, perhaps, as an

agreement to indemnify the sheriff for a levy on the goods of a stranger, 1 Troubat & Haley, 483, in note. This course is frequently adopted when the plaintiff has confidence in the defendant, or when, for other causes, he is willing or desirous the goods should not be removed.

But such an indorsement does not amount to a direct or implied stay of the proceedings, nor is it understood without more that the execution is put in the hands of the sheriff for security, and not for sale. Such an indorsement does not, nor does it purport to interfere with the action of the sheriff in any other particular. Although it must be confessed there is appearance of contradiction in the dicta of some of the judges, yet it is the rule in this state, and in the neighboring state of New York, as is decided in Eberle *vs.* Mayer, 1 *R.* 369; Howell *vs.* Alkyn, 2 *R.* 283; Doty *vs.* Turner, 8 *Johns.* 20; Commonwealth *vs.* Stremback, 3 *R.* 343; Corlies *vs.* Stanbridge, 5 *R.* 290, that merely leaving the property in possession of the defendant, though with the plaintiff's consent, is not, *per se*, fraudulent. The rule is, if goods be left in defendant's possession, even with plaintiff's permission, the lien is not lost, unless there be fraud. Casting aside, therefore, that which does not enter into its merits, is there any evidence that the subsequent execution creditors acceded to the arrangement made between Dr. Richards and the defendant, Garlin? Of this important fact we perceive no proof. There is nothing to evince that the subsequent execution creditors *agreed* that the store should be left open, and that the goods might be sold by the clerk at private sale. If there was, they were then in *pari delicto*, or, as the judge expresses it, in the same boat. No direction was given *by them*, to the sheriff, except what appears on the back of the writ, the effect of which has been already considered. So far from proof of an assent to the agreement, on their part, there is proof from which plain inference may be drawn that they did not agree to it. The sheriff says he would most certainly have closed the store, if it had not been for Dr. Richards. He would have had some advice before he would have closed on the two other executions. Neither of the other two gave him, as he says, orders not to close the store. They left him to exercise his own discretion about it. He would not have suffered the store to remain open, unless Keyser and the bank had agreed that the levies should be at their risk, as marked on the execution. There was then no *agreement* whatever between the two last execution creditors and the sheriff, such as is proved took place between him, the plaintiff and the defendant; or if there was, certainly no proof of it was given. The sheriff was governed in his actions, as regards them, solely by the indorsement on the writ, as he testifies.

The defendant in error wishes us to infer a knowledge of, and consequent acquiescence in, the agreement. But the evidence on

this point is too loose and unsatisfactory. It is true, they may have known of the first execution, that the store remained open from that time, 3d April, the day of levy, until the 21st, when the store was closed, and that in the intermediate time, the clerk was engaged in selling the goods. However this may be, there is no proof even of any knowledge of the secret agreement, even if that would affect them, which I by no means admit; much less is there any evidence from which we would be at liberty to infer they became parties to the arrangement.

> Decree of the court reversed, and the money ordered to be paid to the Bank and George H. Keyser in order of time the executions came to the hands of the sheriff, the balance, if any, to be paid to Dr. Richards' execution.