## APPEAL OF STROUDSBURG BANK.

[STROUDSBURG BANK v. MILLER.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF MONROE COUNTY.

Argued March 11, 1889—Decided May 27, 1889.

[To be reported.]

1. While a direction to stay proceedings upon a writ of fieri facias, or any act evincing an intention not to have a sale of the property but to hold the writ for purposes of lien, is a waiver of priority in favor of another writ coming into the hands of the sheriff;

2. Yet the first execution creditor will not be postponed, merely because he issued his writ to get priority of lien as against other creditors, if he do not interfere with the sheriff in the performance of his duty, nor give any directions to him inconsistent with the exigencies of the writ.

3. Where, however, no levy is made by the sheriff upon the first writ, but personal property is levied upon and sold under the second, the money made must be appropriated to the second writ, leaving the first execution creditor to an action against the sheriff for redress.

Before Paxson, C. J., Clark, Williams, McCollum and Mitchell, JJ.

No. 149 July Term 1887, Sup. Ct.; court below, No. 12 December Term 1886, Fi. Fa. sur judgment No. 34 December Term 1886, C. P.

Two judgments had been entered against Thomas Miller; one in favor of D. H. Wilson & Co. at No. 131 May Term 1884, and the other in favor of the Stroudsburg Bank, at No. 34 December Term 1884. On October 2, 1886, a writ of fieri facias issued upon the judgment of D. H. Wilson & Co. and was placed in the sheriff's hands. Before any levy was made under this writ, on October 20, 1886, a writ of fieri facias was issued upon the Stroudsburg Bank judgment and placed in the sheriff's hands, with directions to proceed at once to levy and sell.

The sheriff's return to the two writs showed that the levy and sale were made under the writ issued by the Stroudsburg Bank alone. The property levied upon and sold consisted wholly of personalty which had been set aside for the defendant, under the exemption law, upon a previous writ issued by the bank on their judgment. The Wilson & Co. judgment waived the benefit of the exemption law, but the judgment of the bank did not. The defendant made no claim for the benefit of the exemption law under the bank's last execution.

The money having been ruled into court, *Mr. L. M. Burson*, appointed auditor to make distribution, found that the D. H. Wilson & Co. writ came into the sheriff's hands on October 2, 1886; that some time after, and prior to October 20, 1886, and prior to any levy, the attorney for D. H. Wilson & Co., "directed sheriff Fisher to hold the writ until further orders from him, and that he told the said sheriff that he need not be in a hurry about that writ, and that he would let him, the sheriff, know, and that he would hear from him." Under these facts, the auditor held that the law postponed the lien of the D. H. Wilson & Co. writ, and that it was lost as against the claim to the proceeds of sale by the Stroudsburg Bank on its writ. He therefore awarded the fund to the said bank.

To the distribution reported, D. H. Wilson & Co. filed ex-

ceptions, alleging that the auditor erred in distributing the fund in court to the judgment of the Stroudsburg Bank, and in not distributing the said fund to the judgment of D. H. Wilson & Co.

On argument, the court, SCHUYLER, P. J., 3d judicial district, holding special term, filed the following opinion and decree:

The fund for distribution is made up largely, if not wholly, of the proceeds of personal property which had been set aside to the defendant on his claim for exemption under a prior execution. Levy was made and the property was sold under both of the executions above named, that in favor of D. H. Wilson & Co. having been issued on a judgment with a waiver of exemption, and the defendant making no claim of exemption against the execution of the Stroudsburg Bank. Notwithstanding the D. H. Wilson & Co. execution was placed in the sheriff's hands several days prior to that of the bank, the commissioner distributed the fund to the latter execution. Whether or not there was error in this is the only question raised by the present exceptions.

The action of the learned commissioner is based on the idea, and he so finds, that after the D. H. Wilson & Co. execution reached the sheriff, their attorney directed the sheriff "to hold the writ until further orders." We think that the evidence hardly justifies this finding. But, assuming the fact to be as found by the commissioner, he seems to have regarded it as conclusive evidence of fraud. We discover no warrant for this. Prima facie, no doubt such a direction as that found by the commissioner would postpone the execution of D. H. Wilson & Co. to that of the bank, "but it does not follow that this prima facies may not be rebutted:" Bush's App., 65 Pa. 368.

Turning now to the evidence, it becomes clear that no fraud was intended. The reasons given by the attorney of D. H. Wilson & Co. for the instructions he gave to the sheriff, are entirely satisfactory. But aside from this, it is difficult, if not impossible, to conceive of any other than an innocent motive for these instructions. It is admitted that the only judgments anywhere against the defendant are those in favor of the present contestants. The entire proceeds of sale amounted to but

$274.85. The property sold, as has been seen, was the same that had been set aside to the defendant as exempt from levy and sale under a previous execution. If there was any other property levied upon, it does not appear what it was, and judging from the amount realized by the sale, the value of the other property, if any, must have been very trifling. Now this exempt property was safe to the defendant against all the world except D. H. Wilson & Co. There was therefore no necessity to cover it up and no motive for collusion.

The execution of D. H. Wilson & Co. having reached the sheriff first, was entitled to be first paid, unless it lost its position through fraud. Fraud will not be presumed. The party alleging fraud must prove it by the weight of evidence. This has not been done in the present case. We think therefore that the learned commissioner erred in awarding the fund to the Stroudsburg Bank.

And now May — 1887, the exceptions are sustained, and it is ordered that the fund for distribution be paid to D. H. Wilson & Co.

Thereupon the Stroudsburg Bank took this appeal, specifying that the court erred in holding that the execution of D. H. Wilson & Co. was not postponed to that of the Stroudsburg Bank.

*Mr. S. Holmes*, for the appellant:

The auditor finds as a fact, that the attorney for D. H. Wilson & Co. instructed the sheriff to hold or stay the writ until further orders from him, before any levy had been made under his writ, and before the bank's writ came into the sheriff's hands; and that the sheriff never received any instructions to proceed under the Wilson writ.

1. Without regard to the motive or intention of the plaintiff, the giving of such instructions to the sheriff, was an interference with him in the discharge of his duty in directing a delay of sale, and constituted a constructive and legal fraud with respect to subsequent execution creditors: Eberle v. Mayer, 1 R. 366; Commonwealth v. Stremback, 3 R. 341; Bradley v. Wyndham, 1 Wils. 44; Snyder v. Kunkleman, 3 P. & W. 487; Cowden v. Brady, 8 S. & R. 511; Hickman v. Caldwell, 4 R.

380.   Such instructions for a stay, in no wise countermanded, constitute per se a legal fraud as to subsequent execution creditors, which cannot be rebutted or explained away by parol evidence.   Even if the prima facie presumption of fraud arising from the act itself may be rebutted by countervailing testimony, in this case no such explanation of the stay has been shown.

2.  There was nothing before the court below, and there is nothing regularly here, but the question of law upon the facts as reported by the auditor.   The evidence is not properly before this court: Stillwell's Est., 8 Phila. 178; O'Kane's Est., 1 W. N. 416.   The court will not direct the testimony to be returned, unless on cause shown: Quinn's Est., 1 W. N. 9; McMullen's Est., 1 W. N. 415.   And the report of an auditor upon the facts will not be set aside except for plain mistake affirmatively established or apparent upon its face: Harland's Accounts, 5 R. 323; Stehman's App., 5 Pa. 413; Miller's App., 30 Pa. 478; Yohe's App., 55 Pa. 121; Brua's App., 55 Pa. 294.

3.  Moreover, the sheriff's return to the Stroudsburg Bank writ shows that all the personal property was levied upon and sold by virtue of that writ alone.   The return is conclusive as between the parties to this contest; it cannot be contradicted, and the right of the bank to the proceeds of the sale is indubitable : Mentz v. Hamman, 5 Wh. 152.   A sheriff's return to a fieri facias is conclusive on the plaintiff therein : Bogue's App., 83 Pa. 103.

*Mr. Charlton Burnett*, for the appellees :

1.  There is nothing in the evidence taken before the auditor to justify him in the finding that the sheriff was instructed to hold the writ until further orders from the attorney of D. II. Wilson & Co.   And further, it has always been the practice for auditors to report the evidence to the court, and upon exception, the court looks into the evidence, when necessary, to ascertain whether the auditor has erred in his conclusions of fact or law.

2.  There has been a wide departure from the rule held in Eberle v. Mayer, 1 R. 366, and kindred cases.   In Bush's App., 65 Pa. 368, this court held: "Prima facie, no doubt they would be postponed to subsequent executions, according to Eberle v. Mayer, 1 R. 366, and other cases.   But it does not follow that

this prima facies may not be rebutted by showing that it was not for the purpose of delay and indulgence to the debtor, but in the strict and diligent pursuit of his remedy by the creditor."

OPINION, MR. JUSTICE CLARK:

The question in this case arises upon an appeal from the decree of the Court of Common Pleas of Monroe county, distributing the proceeds of the sheriff's sale of the personal property of Thomas Miller. The fieri facias issued upon the judgment of D. H. Wilson & Co., came into the sheriff's hands October 2, 1886; the writ of the Stroudsburg Bank, October 20th, thereafter. The sheriff made no levy under the Wilson writ until the bank writ came into his hands; indeed, it does not appear by the record that a levy was at any time made on the former writ.

The sheriff testified that at the time the Wilson writ was received, he had no other business up in that country, and he asked Mr. Burnett, the attorney, if there was anything urgent about the matter, and Burnett replied he did not know that there was, as no one could have any preference; that Burnett afterwards told him he need not be in a hurry, as he thought the matter would be arranged, and that he would let him know, etc., but that he received no further instructions from Burnett in the matter. The sheriff, thereupon, without the knowledge of Burnett, made a memorandum upon the writ, in the words following: "To hold till further orders from Burnett, attorney." The sheriff testifies as follows: "I do not know that Mr. Burnett used the word ' hold.' I did not take any memorandum of this conversation. Mr. Burnett called my attention to this indorsement in lead pencil a few days ago; he asked me how I came to make this indorsement on the writ. I think I told him among other things that I thought Thomas Miller had given me instructions to stay the writ; my reason for saying so was that the matter was stale and I did not just think. I do not recollect whether Thomas Miller told me to stay the writ, and I cannot tell where he talked to me about it."

Mr. Burnett testified, that after the writ was issued, the sheriff said he could not go up to Miller's at that time, as he had other engagements, and that he told the sheriff he (the sheriff) knew his duty in the premises; that he did not direct

the sheriff as set forth in the memorandum; that he did say to him there might be labor claims presented and that Miller would not be entitled to exemption as to them, if they exceeded $50, and he would let him know what was to be done.

When the Stroudsburg Bank issued their writ they gave instructions to the sheriff to proceed at once. A levy was thereupon made on the latter writ, the personal property sold, and the proceeds brought into court for distribution. The contention of the Stroudsburg Bank is, that the effect of Mr. Burnett's directions to the sheriff is to postpone the Wilson writ, and to give the bank writ a preference in the distribution.

It is undoubtedly true, that an execution issued or kept on foot with intent to hinder, delay, or defraud creditors, and not to make the money, will be postponed to a subsequent writ: Snyder v. Kunkleman, 3 P. & W. 487; Keyser's App., 13 Pa. 409. But a creditor will not be postponed, merely because he issued his writ to prevent other creditors levying on the property, if he does not interfere with the sheriff in the performance of his duty, nor give any directions inconsistent with the exigencies of the writ: Brown's App., 26 Pa. 490. A direction to stay proceedings until further orders, however, or any act evincing an intention not to have a sale of the property, but to hold the writ for purposes of lien, is a waiver of the priority of the execution in favor of another writ, coming into the sheriff's hands in the meantime: Eberle v. Mayer, 1 R. 366; Lowry v. Coulter, 9 Pa. 349; Freeburger's App., 40 Pa. 244.

But whether we take the statement of the sheriff or of Burnett, or of both of them, we fail to find enough to justify the finding of the auditor, that " the sheriff was instructed to hold the writ until further orders from Burnett." The full import of all that is shown is, that the sheriff was not prepared to execute the writ at once, and Burnett being informed of this, and believing that no claim could have precedence of his writ, excepting, perhaps, some labor claims, of which he did not appear to have been fully informed, told the sheriff there was no hurry about it, that the matter might be arranged, that he would let him know. The writ would seem to have been issued not for security, nor to hinder or delay creditors, but to make the money. The delay in the execution of the writ would appear to have originated in the suggestion of the sheriff, and

whether Burnett's purpose was to accommodate him, or to facilitate a settlement of the claim, it is clear that his motives were innocent, and that the sheriff was in no way interfered with in the discharge of his duty. The rule of law which governs cases of this character is clearly defined in Landis v. Evans, 113 Pa. 332.

The writ of D. H. Wilson & Co. waived the benefit of the exemption law ; the bank writ did not. The property levied upon and sold consisted wholly of that which had been set aside under a previous writ issued by the bank on their judgment; there were no other judgments, and it does not appear that there were, in fact, any labor claims ; there was therefore no motive for any fraudulent action or collusion.

The execution of D. H. Wilson & Co. having been first issued would ordinarily, therefore, be first entitled ; but, unfortunately, there was no levy made upon that writ. The levy was made upon the writ of the bank only, and upon that writ the personal property was sold. In McClelland v. Slingluff, 7 W. & S. 134, it was held that in such case the sheriff must apply the money to the writ upon which the levy and sale were made, and not to the first writ, upon which no levy was indorsed or attached. The money made when this is the case, says Mr. Justice ROGERS, belongs to the second execution creditor on whose writ the goods were levied and sold, leaving the first execution creditor to an action against the sheriff for redress. To the same effect is Schuylkill Co.'s App., 30 Pa. 358.

> The decree of the Common Pleas is reversed and the record remitted, in order that distribution may be made in accordance with this opinion ; the appellee to pay the costs of this appeal.