In re LYNCH.

(District Court, E. D. Pennsylvania.   January 26, 1914.)

No. 4622.

1. LANDLORD AND TENANT (§ 269*)—DISTRESS—PROPERTY SUBJECT.
    While a landlord in Pennsylvania may not distrain his tenant's goods already in custodia legis under an execution, a mere paper levy made or maintained to obtain a mere formal lien will not prevent the landlord, or any other judgment creditor, from exercising his right to seize the goods.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1083–1097; Dec. Dig. § 269.*]

2. LANDLORD AND TENANT (§ 269*) — DISTRESS WARRANT — LEVY — PROPERTY HELD UNDER FI. FA.
    A tenant' being indebted to various creditors, one of them levied on certain of his goods in August, 1912, making an appraisement, leaving the copy of the writ with him, and warning him not to remove any of the goods. After the levy, the deputy returned in company with his principal, the sheriff's officer, and ascertained that the goods levied on were intact. Nothing further was done under the levy, and, in November following, the landlord distrained, seizing the goods for rent due from February to October, 1912, but the sale under the distraint was postponed from week to week from November 20, 1912, until bankruptcy intervened in January, 1913; these postponements being at the instance of the bankrupt, whose creditors were holding meetings with the hope of a compromise, to which the landlord assented. Held, that such facts did not show that the execution levy was merely colorable or made in bad faith, and hence the goods were not subject to the distraint.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1083–1097; Dec. Dig. § 269.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Kenderton S. Lynch. On certificate of referee presenting for review an order setting aside a landlord's claim for a lien under a distress levy. Affirmed.

Julius C. Levi and Levi & Mandel, all of Philadelphia, Pa., for trustee.

Edwin Fischer, Henry N. Wessel, and Wessel & Aarons, all of Philadelphia, Pa., for landlord.

J. B. McPHERSON, Circuit Judge. The bankrupt was a hotel keeper with a going business. When the petition was filed, his personal property was claimed by an execution creditor and by the landlord; the distraint being several weeks later than the fi. fa. The property was sold, and, on distribution of the fund, the only question raised was the validity of the levy; the landlord attacking it as merely colorable.

[1] Counsel agree that in Pennsylvania a landlord may not distrain upon the tenant's goods if these are already in the hands of the law. They agree also that a paper levy, made or maintained for the mere purpose of obtaining a formal lien, will not prevent the landlord, or another judgment creditor, from exercising his right to seize the same

goods. No doubt exists about these rules, but the Supreme Court of the state has not applied them with uniform strictness. The earlier decisions are less liberal to the first levy than the decisions of more recent date. The present state of the Pennsylvania law on this subject will be found in Platt-Barber Co. v. Groves, 193 Pa. at page 480, 44 Atl. 571, at page 573, where Justice Mitchell summarized it as follows:

"The rule is well established that an execution which is not put in the sheriff's hands with the bona fide intention of collecting the debt, but merely to be held as security, or to prevent other creditors from coming upon the debtor's goods, is fraudulent as to them and will be postponed to subsequent levies. And stay or unusual delay of the proceedings, allowing the debtor to sell or otherwise to deal with the goods in contravention of the levy, and other acts of similar nature, give rise to a presumption of want of good faith. Dorrance's Adm'r v. Com., 13 Pa. 159; Earl's Appeal, 13 Pa. 483; Freeburger's Appeal, 40 Pa. 244. Such acts, however, are not frauds per se, but only evidence of fraud, which may be rebutted, and, if the creditor's delay is shown to be in good faith and in furtherance of a genuine intention to collect his debt, he will not be postponed. Indulgence is not in itself fraudulent, but, on the contrary, is sometimes good policy for the creditor as well as mercy to the debtor, especially where, as in the present case, the subject of the levy is a store or going business of any kind. There is no fixed time by which such acts are to be judged. The test is good faith and absence of actual hindrance of others. As long as the creditor is honestly seeking collection, even by coaxing, and is not, in fact, hindering later executions, so long his indulgence to the debtor will not be a bar to his maintenance of his priority of levy.

"The earlier cases undoubtedly applied the presumption of fraud with great strictness and exhibit a tendency to treat it as a rule juris et de jure. But it was never divorced intentionally from its true principle, and the later decisions have treated the question more liberally as one of fraud in fact to be determined in each case by the evidence. Broadhead v. Cornman, 171 Pa. 322 [33 Atl. 360]; Landis v. Evans, 113 Pa. 332 [6 Atl. 908]; Stroudsburg Bank's Appeal, 126 Pa. 523 [17 Atl. 868]."

See, also, to the same effect, Wadas v. Sharp, 27 Pa. Super. Ct. 236.

[2] In every case, therefore, the vital point is the good faith of the first levy, and this must depend on the facts of the particular controversy. Here the referee has found the facts to be as follows:

"Lynch was indebted to various creditors, and was being pressed for the indebtedness. One of his creditors levied upon him in August, 1912, in the regular way, making an appraisement, leaving a copy with him, and warning him not to remove any of the goods. After this levy the deputy returned in company with his principal, the sheriff's officer, and ascertained that the goods levied upon were intact. Nothing further was done under this levy. In November, 1912, the bankrupt's landlord distrained upon him. The sale under the distraint was for rent due from February until October, 1912, and was postponed from week to week from November 20, 1912, until the bankruptcy in January, 1913. These postponements were at the instance of the bankrupt, whose creditors were holding meetings, and who hoped for a compromise. To these postponements the landlord assented. * * *

"Unless, therefore, the action of the execution creditor was in bad faith, his execution must be considered a valid one.

"In deciding this question, the circumstances of the case are to be considered. The bankrupt was in failing circumstances, but making an effort to settle with his creditors, and was securing indulgence from them on this ground. The execution creditor did not proceed to a sale; and in the same manner the landlord, after the distraint, postponed his sale from week to week until the proceedings in bankruptcy supervened.

"The referee cannot believe that the failure in one case to proceed to a

sale, any more than the failure in the other case, was in bad faith. The action of the execution creditor comes directly within the language of Justice Mitchell."

As I understand the ruling in Platt-Barber Co. v. Groves, these findings of the referee sustain his order rejecting the landlord's claim. No other question was raised before him except the relative rank of the execution and the distraint, and this depended on the good faith of the levy. For this reason I shall not consider the other question that was referred to for the first time at the argument before me. It was evidently an afterthought. The landlord did not put his claim on any such ground, but (as I have said) confined himself to the position that his distraint was better than the levy, because the levy was purely formal and was neither made nor maintained in good faith.

The order of the referee is affirmed.