# Landis *versus* Evans.

1. When the primary design of a plaintiff in issuing an execution is to obtain a lien upon the defendant's personal property, and not to sell the same except in the contingency of a subsequent execution being issued, the lien of the execution will be postponed to a subsequent execution.

2. When the facts in a case do not warrant the conclusion that the plaintiff issued an execution to obtain a lien upon the defendant's personal property, and not to sell the same except in the contingency of a subsequent execution being issued, but show simply a disposition on part of the plaintiff to treat the family of the defendant in the execution with due consideration, and not to subject them to unnecessary inconvenience or annoyance, the lien of the execution will not be postponed to a subsequent execution.

3. The assignments of error are an essential part of the pleadings in the Supreme Court, and as such should be so complete in themselves as not to require reference to the other parts of the record. Each specification should in and of itself present the question the Court is called upon to decide.

May 17th, 1886.  Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN, and CLARK, JJ.  TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Lancaster county:* Of January Term 1886, No. 19.

Rule to show cause why the sheriff of Lancaster county should not be ordered to pay the proceeds of the sale of the personal property of F. A. Diffenderfer to Charles I. Landis. Landis held a judgment against Diffenderfer for $2,600, upon which he issued a writ of *fieri facias* to April Term 1885, No. 37.

Rule to show cause why the sheriff of Lancaster county should not be ordered to pay to plaintiff out of the proceeds of the sheriff's sale of the personal property of F. A. Diffenderfer to Robert A. Evans the sum of $261.04.

Evans held a judgment against Diffenderfer for $250, which with interest amounted to $261.04, upon which he issued a writ of *fieri facias* to April Term 1885, No. 38.

The sheriff sold the personal property of Diffenderfer on both writs, and realized the net sum of $424.01.

On the argument of the above rules Landis and Evans joined in the following case stated for the judgment of the Court:

The *fieri facias* to April Term 1885, No. 37, was issued on the 26th day of February, A. D. 1885, and came to the hands of the sheriff at 2¼ o'clock, P. M. of that day.

The *fieri facias* to April Term, 1885, No. 38, was issued on

[Landis *v.* Evans.]

the 27th day of February, A. D. 1885, and came to the hands of the sheriff at 2 o'clock P. M. of that day.

On the 26th day of February, 1885, after *fieri facias* to April Term 1885, No. 37, came to the hands of the sheriff, Mr. Landis, the plaintiff, told the sheriff's deputy not to go to defendant's house till next day, as the house was torn up.

On the morning of the 27th of February, 1885, Mr. Landis, the plaintiff in *fieri facias* to April Term, 1885, No. 37, went to the sheriff's office, and asked the sheriff when they were going to defendant's house to make a levy. The sheriff told him he did not know exactly, as Charles Strine, his deputy, was away at that time, and Mr. Hippey, his chief deputy, was not in. Mr. Landis then said the ladies were clearing up, or fixing things up in the house, and if it made no difference to the sheriff he might go up in the afternoon. The sheriff replied that it would not suit him to go up in the forenoon, as Charles Strine was away. That was the whole of the conversation.

On the afternoon of the 27th of February, after *fieri facias* to April Term, 1885, No. 38, came to the hands of the sheriff, Mr. Strine, the sheriff's deputy, went to the house of the defendant and made a levy under both executions. On the 13th day of March, 1885, defendant's personal property was sold under both executions. Net proceeds of sale 424.01. The records of the judgments upon which the said executions were issued are considered part of this case stated. Mr. Landis, the plaintiff in *fieri facias* to April Term, 1885, No. 37, is the brother-in-law of the defendant.

Plaintiff's attorney in *fieri facias* to April Term, 1885, No. 38, when he handed the writ to the sheriff, instructed him to proceed at once and make a levy and sale.

If under those facts the Court be of opinion that the *fieri facias* of Mr. Landis, No. 37, was postponed to that of Mr. Evans, No. 38, they will make Mr. Evans's rule absolute and discharge that of Mr. Landis; and if they be of opinion that the *fieri facias* of Mr. Landis was not postponed to that of Mr. Evans, they will make Mr. Landis's rule absolute and discharge that of Mr. Evans. Both parties reserve the right to take a writ of error to the judgment of the Court.

The Court, PATTERSON, J., discharged the rule of Landis, and made absolute the rule of Evans. Landis thereupon took this writ, and filed the following assignments of error:

1. The Court erred in discharging the rule of Charles I. Landis.

2. The Court erred in making absolute the rule of Robert A. Evans.

*D. G. Eshleman,* for plaintiff in error.—Where an execution creditor in good faith issues an execution he is entitled to the fund realized by it. No subsequent writ can affect him. The Courts have always held that the prior creditor will only lose his precedence where he has been guilty of some act which plainly indicates to the judicial mind that his writ has been issued merely for the purpose of obtaining a lien, and not with the intent of making his money by a sale of the property of defendant. Only in cases where the execution is not issued for the enforcement of the judgment is it fraudulent as to subsequent execution creditors: Dorrance *v.* Commonwealth, 1 Harris, 160; Brown's Appeal, 2 Cas., 490; Hickman *v.* Caldwell, 4 R., 376.

The great question then in every case is the intention of the plaintiff: 1 Trickett on Liens, 343, § 289; Lautz *v.* Worthington, 4 Barr, 155; Wier *v.* Hale, 3 W. & S., 285; Thorn's Case, 2 Barr, 331.

An execution will not be postponed for an officer's default. His procrastination, even by sufferance of the creditor, is not fraudulent *per se,* and postpones only where the creditor directs him not to proceed: McGinnis *v.* Prieson, 4 Norris 116.

Even if a plaintiff is guilty of *laches,* and none has been shown in this case, he will not be postponed, if he order the sheriff to proceed before another writ comes into his hands: 1 Trickett on Liens, 351, § 295; Deacon *v.* Govett, 4 Phila., 7; Freeburger's Appeal, 4 Wh., 244; Mentz *v.* Hamman, 5 Wh., 150.

*A. J. Eberly,* for defendant in error.—The lien of an execution upon personal property dates from the time of the delivery of the writ to the officer. The test of the validity of such lien is, whether the execution creditor really means to obtain his money, in determining whether it is fraudulent or not. Executions to hinder and delay creditors are included within the Statute of Frauds. The only legal purpose for which an execution can be or is issued, is for the obtaining of the fruits of a judgment—the satisfaction of the debt or judgment on which it issues. Where a levy is delayed by direction of the party, it will be held fraudulent as against a junior writ: Earl's Appeal, 1 Harris, 483; Corlies *v.* Stanbridge, 5 Rawle, 290; Commonwealth *v.* Stumback, 3 Rawle, 344; Hickman *v.* Caldwell, 4 Rawle, 376; Wier *v.* Hale, 3 W. & S., 288; Fruitt Brothers & Co. *v.* Ludwig, Kneeder & Co., 1 Casey, 149.

Mr. Justice STERRETT delivered the opinion of the Court, October 4th, 1886.

As has been repeatedly said, the assignments of error are an essential part of the pleadings in this Court, and as such should be so complete in themselves as not to require reference to other parts of the record. When the case is disposed of and the record returned to the Court below, the precipe, assignments of error and plea thereto are all the papers that usually remain of record in this Court, as the basis of our judgment or decree, as the case may be. It must be obvious, therefore, that each specification of error should, in and of itself, present the question we are called upon to decide.

In the case under consideration there are only two specifications, one of which is, "The Court erred in discharging the rule of Charles I. Landis," and the other, "The Court erred in making absolute the rule of Robert A. Evans." What these rules respectively were, in disposing of which it is insinuated the Court below committed manifest error, we are not informed by the pleadings, and we might with propriety, and perhaps ought to affirm the judgment, for the reason that there is no valid assignment of errors: but, by referring to the case stated in the record of the Court below, we find that the former was a rule to show cause why the sheriff should not be ordered to pay the proceeds sale of Diffenderfer's personal property to Charles I. Landis, the plaintiff in error, and the latter a rule to show cause why the same money should not be paid to Evans, the defendant in error. It appears Landis and Evans were both execution creditors of the defendant whose property was sold on both executions. Landis's execution was issued and placed in the hands of the sheriff at 2.15 o'clock P. M. on February 26th, 1885, and Evans's execution at 2 o'clock P. M. of the following day. Ordinarily there would be no question that the first execution would be entitled to the money, but the Court awarded it to the second execution, on the ground that the first was postponed in consequence of directions to the sheriff to not proceed immediately and levy on defendant's property. What passed between the sheriff and Landis's attorney is set forth in the case stated; and the question is whether, upon the facts there presented, the Court was right in holding that the first execution was postponed to the second.

It appears, in substance, that on the day the first execution was issued, Landis, the plaintiff therein, "told the sheriff's deputy not to go to defendant's house till next day, as the house was torn up;" and on the following morning he informed the sheriff that "the ladies were cleaning up or fixing things up in the house," and suggested to the sheriff that, if it made no difference to him, "he might go up in the afternoon." It cannot be doubted that what was thus said and

suggested by the plaintiff·in the execution was prompted by a desire to accommodate the family of the defendant in the execution, and cannot be fairly construed as evidence of a design on his part to merely obtain a lien by virtue of his execution and hold the same as security.    The authorities are abundant that when the primary design of a plaintiff, in issuing an execution, is to obtain a lien upon defendant's personal property, and not to sell the same except in the contingency of a subsequent execution being issued, the lien of the execution will be postponed.    The facts recited in the case stated, however, do not warrant any such conclusion.    On the contrary, they show nothing more than a disposition on the part of plaintiff to treat the family of defendant in the execution with due consideration, by not subjecting them to unnecessary inconvenience or annoyance.    We think, therefore, that the learned Court erred in holding that the lien of the first execution was lost.

The order of Court is reversed, and the rule to show cause why the sheriff should not be ordered to pay the proceeds of sale to plaintiff, Charles I. Landis, is made absolute.