Estate of John Cessna, deceased.    Appeal of John C. Kunkel.

*Practice, Supreme Court—Defective assignments.*

Assignments of error are an essential part of the pleadings, and as such they should be so complete in themselves as to show the judgment or decree of the Supreme Court, without reference to any other part of the record, which is remitted to the court below after the disposal of the appeal.

*Executors responsible for mistake in distribution.*

If executors undertake to make distribution of the funds of the estate they do so at their peril, and if they make mispayments or pay to some creditors more than their proportionate share, even under a misapprehension that the estate is solvent, the loss, if any, must fall upon the executors, and not upon the other creditors.

*Decedents' estates—Debts—Collateral security—Release—Distribution.*

C. borrowed from K. $35,000, pledging as security one hundred $1,000 bonds, with the stipulation that for every $1,000 paid to K. two bonds should be returned. He borrowed $5,000 from J., pledging as collateral security ten of the same kind of bonds. He then assigned his redemption right in these 110 bonds as collateral security for certain enumerated debts. He died insolvent. His executors redeemed the ten bonds pledged to J., by paying J.'s indebtedness. They redeemed fifteen of the bonds pledged to K. by paying $7,500, and sold fourteen of them for $14,000. *Held*, that when the executors withdrew the fifteen bonds from K. the latter had no further claim on them, and was, therefore, not entitled to the difference between the amount paid to redeem them and the amount realized from their sale.

Argued May 8, 1899. Appeal, No. 225, Jan. T., 1898, by John C. Kunkel, from decree of O. C. Bedford Co., dismissing exceptions to report of auditor. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Exceptions to auditor's report.

The court, BAILEY, P. J., of the 20th judicial district, specially presiding, filed the following opinion :

At the time of his death, Hon. John Cessna was the owner of 133 bonds of the Bedford Coal and Iron Company, of the par value of $1,000 each. One hundred of these bonds were pledged by decedent to John C. Kunkel as collateral security for a note of $35,000. In his written acknowledgment of the receipt of these bonds Kunkel agreed to return to Cessna two bonds for every $1,000 he may pay on said note.

Ten of the bonds had been pledged to Jackson, Krider & Hastings of Bellefonte, as collateral security for a note of $5,000 which he owed them. The remaining twenty-three bonds the decedent, by a paper dated November 2, 1893, which is designated in the proceedings before the auditor as paper " No. 2," assigned to Henry Cessna and others, as collateral security for the payment of certain debts therein enumerated. On the same day the decedent executed another paper, designated as paper " No. 3," reciting the assignment he had previously made of ten bonds to Jackson, Krider & Hastings, as security for his note of $5,000 given them, and of 100 bonds to John C. Kunkel, as security for the aforesaid note of $35,000 given him, and setting out that " those bonds so transferred will pay said notes and leave a considerable overplus belonging to me as a sort of equity of redemption subject to the payment of said two notes," and transferring " said one hundred and ten bonds as collateral security for the payment of the following debts which I owe, subject, however, to the said debts of Jackson, Krider & Hastings and J. C. Kunkel." This paper then enumerates the debts to which this " overplus " or equity of redemption was to be applied. The ten bonds assigned to Jackson, Krider & Hastings were redeemed by the executors after Mr. Cessna's death by the payment of the note for which they were pledged as collateral. The executors also redeemed fifteen of the bonds which had been pledged to Kunkel by payment to him on his note at the rate of $1,000 for each two bonds, as provided in the receipt of Kunkel herein before referred to. It appears from the evidence that the executor had made an agreement with one Theodore Gerrish for the sale to him of all of the 133 bonds at par,

or their face value.   It also appears that Gerrish received and paid for only thirty-six of the bonds, and made default in the further performance of his agreement so far as regards the purchase of bonds.   For those thirty-six bonds the executors received the sum of $35,900 and have accounted for it.   The principal controversy has arisen with respect to the auditor's distribution of this amount amongst the several beneficiaries named in papers "No. 2" and "No. 3."   The auditor finds as a fact that of the thirty-six bonds sold by the executors, twenty were those designated in paper "No. 3" and sixteen were those designated in paper "No. 2."   We have carefully examined the evidence, and are satisfied that it sustained this finding of the auditor.   This fact being established, it is clear that the beneficiaries under paper "No. 2" are entitled to the proceeds (less share of expenses and costs) of the sixteen bonds which have been pledged for their security, and the beneficiaries under paper "No. 3" to the proceeds (less share of expenses and costs) of the twenty bonds which had been pledged for their security.   It does not matter, so far as this mode of distribution is concerned, that the executors temporarily used part of the proceeds which were in their hands received from sales of bonds pledged by paper "No. 2" to redeem bonds designated in paper "No. 3" or vice versa.   If they did so, it was their duty to return the bonds so diverted to the class of creditors to which it belonged.   Equity will regard that as done which ought to have been done.

We do not think that Kunkel was entitled to participate as a beneficiary under paper "No. 3."   That paper was evidently not intended to give any security additional to what he had theretofore held.   It only related to what Cessna would become entitled to receive out of the bonds pledged under the terms of the pledge.   Therefore, when the executors withdrew from the pledge fifteen of the bonds Kunkel had no further claim on them or on the proceeds arising from their sale.   These fifteen bonds were redeemed from Kunkel at a cost of $7,500 and accrued interest.   Fourteen of them were sold by the executors for $14,000.   The difference between the amount paid to redeem them and the amount realized out of their sale was evidently the "overplus," or profit, which the decedent intended to assign for the benefit of the creditors enumerated in paper

" No. 3." In that paper the decedent expresses his opinion that the bonds pledged to Kunkel were more than sufficient to pay his note. It is fair to presume that he meant they were more than sufficient under the terms of the agreement he had with Kunkel at the time of their transfer to him. We think the executors were justified in applying the moneys which they received from the interest coupons to pay interest accruing on the Kunkel note. It was paid in good faith, and for the benefit of the creditors named in paper " No. 3 " to prevent sacrifice of the pledged bonds. The amount so paid was, therefore, properly deducted from them. If the executors made mispayments or paid to some of the creditors more than their proportionate share, the loss, if any, must fall on the executors, and not upon the other creditors, even if there was a misapprehension on the part of the executors that the estate was solvent. If they undertook to make distribution of the funds of the estate, they did so at their peril: Moorhead's Appeal, 32 Pa. 297. It is clear that the executors could not deprive the creditors of their respective rights under papers " No. 2 " and " No. 3," by voluntarily choosing to appropriate to one class of them funds which belonged to the other.

Under the first additional exception to the executor's account, filed by M. A. Points, Esq., and Messrs. Kerr and McNamara, the auditor had authority to restate the account of the executors, and to distribute the whole fund received by them among those legally entitled to it, in their proper proportions, notwithstanding the advancement made by the executors to some of them beyond the amount to which they were legally entitled.

Now, May 18, 1898, after hearing and upon consideration, all the exceptions filed to the report of the auditor are overruled and it is decreed that said report be confirmed absolutely.

Exceptions dismissed. John C. Kunkel appealed.

*Errors assigned* were (1) in overruling exceptions one and two filed by J. C. Kunkel, which exceptions were as follows : " 1. The auditor erred in not appropriating the proceeds arising from the sale of fourteen bonds received from John C. Kunkel to the claim of John C. Kunkel against John Cessna, deceased. 2. The auditor erred in his finding as a fact that, of the bonds sold, sixteen belonged to paper ' No. 2 ' and twenty to paper

'No. 3.'   He should have found that under the evidence eleven of the bonds sold belonged to paper 'No. 2' and twenty-five to paper 'No. 3;'" (2) in not awarding the fund for distribution to John C. Kunkel.

*J. W. M. Newlin,* with him *R. C. Haderman,* for appellant.

*A. O. Furst* and *E. F. Kerr,* with them *R. C. McNamara, E. M. Pennell, A. L. Little* and *M. A. Points,* for appellee, moved to quash appeal.

PER CURIAM, May 23, 1899:

As to appellee's motion to quash this appeal for violation of our rules relating to assignments of error, it is only necessary to repeat, in substance, what has so often been said in Landis v. Evans, 113 Pa. 332, and many other cases, that assignments of error are an essential part of the pleadings in this Court, and, as such, they should be so complete in themselves as not to require reference to other parts of the record presented for our consideration.   When the cause is disposed of by us and the record is remitted to the court below, all that usually remains of record here are the præcipe, assignments of error and pleas thereto.   These should be so complete in themselves as to show the basis of our judgment or decree, as the case may be.   It must therefore be obvious to every reflecting mind that each specification of error, respectively, should, in and of itself, present the question we are called upon to decide.

Tested by this principle, the motion to quash is well taken and should prevail; but we are all so well satisfied with the correctness of the learned court's decision on all the questions presented by the record that we have concluded to dispose of the case on its merits by affirming the decree appealed from, on the opinion of the learned president of the 20th judicial district, who specially presided at the hearing.

We deem it unnecessary to add anything to what he has so well said.

Decree affirmed and appeal dismissed at appellant's costs.